ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| VP PETROLEUM LLC: QUICK STOP ENERGY, LLC<br>Apelado<br><br>v.<br><br>J & Z GENESIS.; OFICINA DE GERENCIA DE PERMISOS; Y OTROS<br>Apelante | KLAN202500430 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Número: AG2024CV01920<br><br>Sobre: Injunction |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparecen ante nos J & Z Genesis, Inc. (J & Z) y el Sr. Jorge Cajigas Morales (señor Cajigas Morales) (en conjunto, parte apelante), y nos solicitan que revoquemos una *Sentencia* emitida el 11 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI).[1] Allí, el foro de instancia expidió un auto de interdicto presentado por VP Petroleum LLC (VP Petroleum) y Quick Stop Energy LLC (Quick Stop) (en conjunto, parte apelada), revocó un permiso de construcción emitido por la Oficina de Gerencia de Permisos (OGPe) a favor de J & Z y paralizó la construcción de la estación de gasolina de esta.

Por los fundamentos que esbozamos a continuación, se confirma la *Sentencia* apelada.

**I.**

El presente caso tiene su génesis el 29 de octubre de 2024, cuando la parte apelada presentó una *Petición de Injunction Estatutario* al amparo del Artículo 14.1 de la Ley Núm. 161-2009, mejor conocida como la *Ley para la Reforma del Proceso de Permisos*

---

[1] Apéndice XXIII de la *Petición de Apelación*, págs. 172-185. Notificada y archivada en autos el 12 de marzo de 2025.

Número Identificador

SEN2025_____

*de Puerto Rico, infra,* contra J & Z y la OGPe.[2] En la referida acción, adujo que VP opera una estación de gasolina desde el año 2020, mientras que Quick Stop opera una estación desde el año 2015. Las antedichas estaciones de gasolina ubican dentro de un radio de distancia de 500 y 130 metros, respectivamente, de una estación de gasolina perteneciente a J & Z, en la Carretera Núm. 110 en Aguadilla, Puerto Rico.

Alegó tener un interés propietario que se veía afectado por el permiso de construcción que la OGPe otorgó a J & Z, el 14 de noviembre de 2023,[3] para la construcción de la antedicha estación de gasolina y que este fue emitido ilegalmente.

En específico, esgrimió que, el 21 de diciembre de 2015, la OGPe aprobó la notificación de requisitos del permiso de construcción para ampliar la estación y construir una caseta de cobro. No obstante, alegó que J & Z presentó la Consulta de Construcción en el año 2022 para reactivar la operación y expansión de la estación como si esta fuera una existente cuando, en realidad, estuvo inoperante por más de siete (7) años. La antedicha consulta fue aprobada por la OGPe el 25 de mayo de 2022.[4]

Asimismo, arguyó que el Permiso de Uso Único que J & Z utilizó para los referidos trámites no era válido, ya que cesó sus operaciones por más de dos (2) años y vencido el término reglamentario máximo para que un negocio esté inoperante y no pierda la vigencia de sus permisos.

Por consiguiente, planteó que la OGPe otorgó los permisos sin que se le notificara ni se celebraran vistas públicas y sin contar con un estudio de viabilidad; todo ello, según arguyó, en contravención con las disposiciones reglamentarias aplicables para la operación de estaciones de gasolina.

---

[2] Apéndice XI de la *Petición de Apelación,* págs. 67-85.
[3] Apéndice IX de la *Petición de Apelación,* págs. 57-62
[4] Apéndice VII de la *Petición de Apelación,* págs. 50-55.

Por su parte, el 9 de diciembre de 2024, J & Z presentó una *Moción de Desestimación por Falta de Jurisdicción in Personam y por Falta de Parte Indispensable Sin Someterse a la Jurisdicción del Tribunal.*[5]

En síntesis, señaló que los emplazamientos que fueron diligenciados en el presente caso eran insuficientes dado que advertían un término de treinta (30) días a partir de su diligenciamiento para presentar una alegación responsiva cuando el término aplicable debía ser de sesenta (60) días, conforme a la Regla 10.1 de Procedimiento Civil, *infra*. Lo anterior porque una de las partes, la OGPe, es una instrumentalidad gubernamental. Por consiguiente, esgrimió que el foro de instancia no había adquirido jurisdicción *in personam* de la parte allí demandada.

Igualmente, sostuvo que procedía la desestimación del caso por falta de parte indispensable. Arguyó que la presencia del Sr. Antonio Pérez Rodríguez (señor Pérez Rodríguez) era indispensable para la adjudicación del caso, ya que poseía un interés propietario sobre la estación de gasolina que podría verse afectado al ser el optante en un contrato de opción de compra del antedicho inmueble que suscribió con J & Z. Acompañó su solicitud dispositiva con el contrato de opción de compra y una resolución corporativa.

El 9 de diciembre de 2024, el TPI celebró una vista en la que se argumentaron los méritos de la moción dispositiva[6] y, el 23 de enero de 2025, la declaró "no ha lugar" mediante una *Resolución.*[7]

En síntesis, el foro de instancia resolvió que adquirió jurisdicción *in personam* sobre J & Z porque se diligenciaron citaciones y mandamientos que fueron tan debidamente notificados, que ésta pudo comparecer a la vista celebrada. En adición, adjudicó

---

[5] Apéndice XII de la *Petición de Apelación*, págs. 86-101.
[6] Apéndice XV de la *Petición de Apelación*, págs. 113-114. Véase Minuta de la vista celebrada el 9 de diciembre de 2024.
[7] Apéndice XIV de la *Petición de Apelación*, págs. 103-112. Véase Minuta de la vista celebrada el 9 de diciembre de 2024.

que no procedía el planteamiento del término de sesenta (60) días toda vez que el recurso incoado era uno de naturaleza estatutaria e independiente, que debía atenderse según los criterios de su propia ley.

Igualmente, resolvió que el señor Pérez Rodríguez no era una parte indispensable en el pleito por no tener un derecho real e inmediato sino un interés futuro, no comprendido en la Regla 16 de Procedimiento Civil, *infra.* Sin embargo, en vista de que la solicitud de revocación se basaba en información alegada como falsa e incorrecta, ordenó que se incluyera, como parte indispensable, al ingeniero que certificó el proyecto de construcción.

Lo anterior fue cumplimentado por la parte apelada el 30 de enero de 2025, mediante una *Moci[ó]n en Cumplimiento de Orden y para Incluir al Co-Demandado Jorge Cajigas Morales y al Expediente Judicial sobre Emplazamiento.*[8] Además, ese mismo día, presentó una *Petición Enmendada de Injunction Estatutario.*[9]

Entretanto, la OGPe interpuso una *Contestaci[ó]n a Petici[ó]n Enmendada.*[10] En esencia, arguyó que el permiso de construcción expedido el 14 de noviembre de 2023 era uno final y firme, y que la demanda entablada no identificó conductas específicas de fraude o alegaciones claras sobre el uso de información incorrecta que justificaran la revocación del permiso.

Asimismo, sostuvo que, por haber expirado el término para presentar un recurso de revisión judicial ante esta Curia, se pretendía utilizar el mecanismo de *injunction* estatutario para impugnar el permiso. Mecanismo que, según expuso, el TPI carecía de jurisdicción para atender ya que el permiso objeto de revisión se presumía legal y correcto.

---

[8] Entrada núm. 37 de SUMAC.
[9] Apéndice XVI de la *Petición de Apelación*, págs. 115-133.
[10] Apéndice XIX de la *Petición de Apelación*, págs. 146-157.

El 26 de febrero de 2025, se celebró la vista en su fondo en la que, declararon los siguientes testigos: (1) Ibrahim Sammy Odeh, representante de VP Petroleum; (2) Hanni Nafez Ibrahim, representante de Quick Stop Energy; (3) Akram Sammy Odeh, vicepresidente de operaciones de VP Petroleum,; (4) Carlos Cardona García, gerente de la OGPe en Aguadilla; (5) José Alberto Reyes Pérez, dueño de la estación de gasolina objeto del pleito; (6) la licenciada Anniebelle Correa Gutiérrez, como testigo de refutación; y, (7) el señor Cajigas Morales, quien, además de figurar como parte, fungió como representante legal de J & Z durante la vista. Además, se admitió prueba documental.[11]

El 11 de marzo de 2025, el TPI emitió una *Sentencia*.[12] En esta, el foro primario hizo las siguientes determinaciones de hecho:

1. El señor Ibrahim Sammy Odeh declaró que es ingeniero civil, graduado de la Universidad Politécnica. No tiene licencia. Se desempeña como comerciante y detallista de gasolina. Representa a VP, LLC, desde 2007. Indicó que, trabaja administrando estaciones de gasolina. Sostuvo que, sus funciones incluyen obtener permisos para sus gasolineras. Dijo tener experiencia en el trámite de al menos 20 permisos.

2. Expresó que, la gasolinera en controversia está cerrada desde el 2015. Señaló que, tiene dos estaciones de gasolina en Aguadilla. La que ubica en la [C]arretera [N]úmero 110 está cercana a la gasolinera que construye el demandado. (Exhibit 1) [.] Declaró que, cuando alquiló (posteriormente compró) su gasolinera, en el predio del demandado no había estructura, que estaba cerrada.

3. Informó que le sorprendió, pues no había sido notificado, ver la construcción de una marquesina en la propiedad del demandado, con un permiso pegado en el lugar, para vender gasolina.

4. Declaró que, el memorial explicativo (Exhibit 2) se refiere a remodelar una estación de gasolina existente. Sostuvo que, la información no es correcta. Indicó que, se trata de una construcción de una estación nueva, donde se pagó patente hasta el 2014, no se renovaron los permisos, ni anualmente, ni a los tres años. Indicó no tener duda de que la operación del negocio estuvo interrumpida por más de dos años.

---

[11] La cual consistió en los siguientes:

> Exhibit 1: Foto de la ubicación de la gasolinera en la Carretera Núm. 110.
> Exhibit 2: Memorial Explicativo preparado por el señor Cajigas Morales.
> Exhibit 3: Carta del 15 de julio de 2016.

[12] Apéndice XXIII de la *Petición de Apelación,* págs. 172-185. Notificada y archivada en autos el 12 de marzo de 2025.

5. A preguntas del licenciado Cajigas, aceptó que luego del huracán, la propiedad estaba destruida. Al mostrársele una foto, que es parte del memorial explicativo, indicó que en el 2020[,] en el lugar no había nada.

6. Durante el contrainterrogatorio, reconoció el efecto del huracán, de la pandemia y las reclamaciones a los seguros, con relación a la intención de seguir operando un negocio de gasolina.

7. A la pregunta, de qué información falsa, contiene el memorial explicativo, expresó que se informó que se está remodelando un[a] estación existente, cuando a los dos años venció su permiso. Sabe que es así, pues pasó por ese proceso.

8. El señor Hanni Ibrahim de Quick Stop Energy LLC, declaró que opera varias estaciones de gasolina. Una de ellas a 50 metros de la propiedad del demandado. Explicó que en el 2015 no había nada en el lugar. Indicó que, si hubiera visto una gasolinera en ese lugar, no hubiera adquirido la suya. Sostuvo que no fue notificado de la nueva construcción.

9. Dijo que el 2021 se reunió con el demandado para comprar la propiedad, pues estando tan cerca, se afecta el movimiento de clientes y él paga $8,000.00 de renta mensual. Indicó que visitó la propiedad junto a una abogada y que en el lugar no había nada. Informó que desistió de comprar cuando no se le mostraron los permisos.

10. Akram S. Odeh declaró ser detallista de estaciones de gasolina. Dijo ser vicepresidente de operaciones de VP. Informó que se percató de la construcción cuando empezaron a poner columnas. Expresó que no fue notificado de la construcción de J&Z propiedad de J. Reyes.

11. Explicó que es falso, que se trate de una reapertura de una gasolinera existente. Que en el 2022 no había edificación, que lo que estaba en el lugar estaba obsoleto; aunque se decía que era una estación de gasolina. Que no había evidencia de pago de patentes, ni registro de ventas desde 2015-2016.

12. A preguntas del licenciado Cajigas, sobre la intención del demandado de mantener vivo el permiso; el señor Odeh indicó que luego de consultar al ingeniero Rubén Ortiz, la información "del saque" es falsa, pues no se trata de una reapertura sino de una estación cerrada por más de dos años. Que eso le pasó a él y OGPe le requirió tramitar el asunto como una estación nueva, donde es necesaria la notificación. Dijo que "lo vivió". Señaló que conoce el reglamento.

13. Al mostrársele la foto (parte del memorial) para que se identificara signo de una estación de gasolina, declaró que desde el 2015 el lugar está cerrado. Que está obsoleto, con unas columnas y una pequeña edificación que parecía una cabina de cobro, que podía ser del centro comercial.

14. El señor Carlos Cardona García declaró que trabaja como gerente de la Oficina de Permisos de Aguadilla (OGPe) desde mayo de 2020. Dijo tener bastante experiencia con los permisos de las estaciones de gasolina (ahora Permiso

Único). Explicó que[,] si el uso se interrumpe, hay que radicar como nuevo. Expresó que ni en la ley, ni en el reglamento se dice c[ó]mo se evidencia la intención de continuar operando.

15. Declaró que, su oficina hace una recomendación a la Junta Adjudicativa, quien tiene discreción para aprobar o no lo solicitado. El memorial explicativo es uno de los factores a considerar- Señaló que él, no evaluó el caso. Eso le correspondió al director anterior, quien lo trabajó como permiso de construcción para reapertura, a discreción de la agencia.

16. Explicó la estación de gasolina cerró en el 2017 como consecuencia extraordinaria del Huracán María. Que[,] posteriormente [,] la Junta Adjudicativa aprobó el caso como consulta de construcción. Que la Junta no tiene que decir por qué lo aprobó.

17. A preguntas del licenciado Cajigas, dijo que la Junta adjudica el asunto a base de su discreción, de acuerdo a la información brindada por el proponente, entre otros factores.

18. A preguntas de la licenciada Acevedo, dijo que el caso se atendió como uno ministerial, donde existe un uso permitido y donde no se estaba operando por los daños causados por el huracán.

19. El señor José Reyes Pérez dijo ser dueño de la estación de gasolina. Luego del [h]uracán María [,] cesó las operaciones. declaró que tuvo problemas en las agencias para obtener los permisos. También con la Compañía de Seguros para obtener dinero parala reconstrucción. Que su intención fue continuar operándola.

20. Presentó una carta con el propósito de demostrar que[,] en el año 2016[,] intentó rentar la estación de gasolina al señor "Fati[,]" quien estuvo acompañado de una dama. A ambos, los identificó en Sala. No hicieron contrato. Admitió no saber quién es Hanni.

21. La licenciada Aniebelle Correa Gutiérrez declaró como testigo de refutación sobre lo declarado por el demandado en el año 2016. Señaló que es abogada y notario. Trabaja como consult[o]ra legal desde 2018-2019 para Hanni. Declaró que la firma en la carta de 2016 no es la de Hanni. Que en el 2021[,] se reunieron con el demandado, y luego visitaron su oficina para discutir la venta de su propiedad. Que observaron que había unos apartamentos y lo que parecía una estación de gasolina. Que no había "bombas". Que había un hangar y lo que parecía una caseta de cobro. Indicó que no hubo acuerdo, pues no había escritura de segregación.

22. Explicó que Hanni no se ha cambiado el nombre. Que en la propiedad del demandado había unos locales comerciales, incluyendo un gimnasio. Que no vio estación de gasolina. Que en algún momento hubo algo allí, que aparentaba ser una estación de gasolina.

23. El ingeniero Jorge L. Cajigas (licencia 7140), declaró que fue contratado para gestionar el permiso para restablecer el negocio de gasolina. Que utilizó la consulta de construcción. Que en su memorial explicativo explicó que la estación estuvo operando hasta el huracán María. Que

luego, el demandado inició gestiones por sí y a través de un gestor en las Agencias Administrativas.

24. Señaló, que es la Junta Adjudicativa, quien tiene la autoridad para, a base de su discreción evaluar su documento. Que él no falsificó nada.

25. Durante el contrainterrogatorio, indicó que se trata de reabrir una estación de gasolina existente, para reparar la misma, una reapertura. Aceptó que la licencia de Hacienda venció para el año 2015-2016, pero que la licencia no es un permiso. Negó que el memorial explicativo tuviera información falsa. Sostuvo que existe permiso de uso activo, que se vio interrumpido por el paso del huracán.

26. Aceptó también que la factura de acueductos anejada en su documento, es una para servicio residencial, no comercial.

27. Manifestó que el demandado tuvo la intención de operar, aunque no esté operando. Que no se trató de un cierre voluntario. Que la falta de uso no tiene como resultado que se pierda el permiso. Explicó que la jurisprudencia valida, que basta con que el demandado exprese que tiene intención de operar. Que por tratarse de una remodelación no tiene que notificar a nadie. Que OGPe atendió su petición y la aprobó.[13]

En esencia, el foro de instancia entendió probado que las operaciones de la estación de gasolina quedaron interrumpidas por más de dos (2) años. Concluyó que J & Z, injustificadamente, gestionó el permiso de construcción a base de una estación existente y, así, obvió los requisitos de vista pública, el estudio de viabilidad y la notificación a la parte apelada, quien se vio afectada sin el debido proceso de ley.

Por consiguiente, resolvió que la actuación de OGPe fue incorrecta porque evaluó el trámite solicitado por J & Z como el de una estación existente, cuando debió tramitarlo como una estación nueva toda vez que los permisos de J & Z ya no eran vigentes por haber cesado sus operaciones por más de dos (2) años.

Por último, el TPI razonó que, si bien J & Z presentó prueba de que realizó gestiones que mostraban su intención de reabrir la estación de gasolina, ello se mantuvo de forma subjetiva y no produjo efectos prácticos reales. En consecuencia, expidió el *injunction*, revocó el permiso y paralizó la construcción.

---

[13] *Íd.*, págs. 173-176.

Inconforme, la parte apelante acude ante nos e imputa al TPI la comisión de los siguientes errores:

1. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL UTILIZAR INCORRECTAMENTE EL ARTÍCULO 14.1 DE LA LEY 161 DEL 1 DE DICIEMBRE DEL 2009, SEGÚN ENMENDADA (23 LPRA SEC. 9011), PARA ASUMIR JURISDICCIÓN EN UN CASO RESUELTO POR LA OGPE MEDIANTE RESOLUCIÓN FINAL Y FIRME (APÉNDICE VII, PÁGINAS 50-55). EL ARTÍCULO 14.1 (SUPRA) NO SUSTITUYE [EL] MECANISMO DE REVISIÓN ADMINISTRATIVA. EL FORO JUDICIAL ENTRÓ A DIRIMIR UNA CONTROVERSIA QUE ESTABA RESUELTA POR EL FORO ADMINISTRATIVO Y PARA LA CUAL NO TENÍA JURISDICCIÓN. ALTERÓ LAS CONTROVERSIAS QUE RESOLVIÓ LA JUNTA ADJUDICATIVA DE LA OGPE, Y ERR[Ó]NEAMENTE ATENDIÓ BAJO EL ARTÍCULO 14.1 (SUPRA) CONTROVERSIAS NO CUBIERTAS POR LAS CIRCUNSTANCIAS QUE PRESCRIBE Y AUTORIZA EL ARTÍCULO 14.1 DE LA LEY 161-2009 (INJUNCTION ESTATUTARIO).

2. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EXCLUIR AL SEÑOR ANTONIO PÉREZ RODRÍGUEZ, QUIÉN [SIC] EN VIRTUD DE UN CONTRATO DE OPCIÓN DE COMPRAVENTA OTORGADO EL 01/09/2023 (APÉNDICE XII, PÁGINAS 98-101) SE HIZO CARGO DE LA REMODELACIÓN DE LA ESTACIÓN DE GASOLINA Y REALIZÓ UNA INVERSIÓN SUSTANCIAL ACONDICIONANDO Y REHABILITANDO LA ESTACIÓN DE GASOLINA. AL EXCLUIR A DON ANTONIO PÉREZ RODRÍGUEZ, PARTE INDISPENSABLE; [SIC] EL TRIBUNAL DE PRIMERA INSTANCIA VIOL[Ó] EL INTERÉS PROPIETARIO DE DON ANTONIO PÉREZ RODRÍGUEZ [,] QUIEN SE VIO AFECTADO POR LA SENTENCIA EMITIDA POR EL TRIBUNAL DE PRIMERA INSTANCIA Y TUVO CUANTIOSAS PÉRDIDAS SUFRIENDO DAÑOS Y PERJUICIOS POR LA SENTENCIA EMITIDA SIN TENER LA OPORTUNIDAD DE DEFENDER SU DERECHO POR HABER SIDO EXCLUIDO DE PARTICIPAR COMO PARTE EN EL CASO DE AUTOS (APÉNDICE XIV, PÁGINAS 111-112).

3. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ESTABLECER CRITERIOS CONTRARIOS A LOS DE LA OGPE, SUSTITUYENDO LA OPINIÓN DE LA AGENCIA POR LA DEL TRIBUNAL SIN UN MOTIVO RAZONABLE. AS[Í], REVOCA LA REGLA 4 DE LAS DE PROCEDIMIENTO CIVIL SOBRE EMPLAZAMIENTOS AL ESTABLECER QUE LA INSUFICIENCIA DEL EMPLAZAMIENTO CEDE ANTE LA CELERIDAD QUE IMPONE EL ARTÍCULO 14.1 DE LA LEY 161 DEL 2009. TAMBIÉN CREA Y DIRIME CONTROVERSIAS NUEVAS QUE NO FUERON PARTE DE LA EVALUACIÓN DE OGPE. EN EFECTO, ESTAS NO SE CONTEMPLAN EN LAS CIRCUNSTANCIAS QUE AUTORIZA EL ARTÍCULO 14.1 DE LA LEY 161 DEL 2009. DE IGUAL MANERA, ALTERA SIN FUNDAMENTO, NI JUSTIFICACIÓN ALGUNA LA JURISPRUDENCIA ESTABLECIDA EN INNUMERABLES CASOS RESUELTOS POR EL FORO FEDERAL Y TAMBIÉN POR ESTE ILUSTRE FORO EN GONZÁLEZ MUÑIZ VS ARPE CASO KLRA0400768; LUIS A. ROSARIO V JUNTA REVISORA DE PERMISOS KLRA201400417, KLRA201400965; SAMUEL HERNANDEZ ORTIZ ET ALS V DIVISIÓN DE

REVISIONES OGPE, MUNICIPIO DE CAGUAS, KLRA201800282; ING. ARMANDO CUBI MALDONADO ET, ALS V OGPE ET, ALS, KLRA201700831; PEOPLE EX RE. TREBAT V. CITY OF PARK RIDGE, 249 [N].E. 2D 684; CANTELLI V. HANLIN ADD, 83 S[O][.]2D 563; BROWNINO-FERRIES INDUSTRIES OF ST. LOUIS V. THE CITY OF [H]ARD AND [H]EIGHTS 247 FED. SUPP 1340. (Itálicas y subrayado suprimidos).

La parte apelada compareció mediante su *Alegato en Oposición de Apelación*. En esencia, sostiene que el *injunction* estatutario es el mecanismo idóneo para impugnar el permiso de construcción y el foro primario no cometió los errores señalados. Plantea que, no fue notificada de la solicitud de construcción y por ello no tuvo oportunidad de participar en el procedimiento administrativo. Además, sostiene que, el señor Pérez Rodríguez nunca fue mencionado por la parte apelante en el trámite para obtener el permiso ni presentó evidencia de que este tuviera el dominio, posesión o uso del inmueble, por lo que no podía ser considerado como parte indispensable en el caso. Señala que, la parte apelante nunca probó actos ostensibles que demostraran su intención de continuar con el uso de la estación de gasolina.

Con el beneficio de la comparecencia de ambas partes y el audio de la vista en su fondo, procedemos a resolver el recurso ante nuestra consideración. Veamos.

## II.

### a) *Injunction* estatutario al amparo de la Ley 191-2009

La Ley Núm. 161-2009, mejor conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, 23 LPRA sec. 9011 *et seq.*, fue aprobada con el propósito de reformar y transformar el sistema de obtención de permisos. *Horizon v. Jta. Revisora, RA Holdings,* 191 DPR 228, 236 (2014). "[E]s la disposición legal que establece el marco jurídico y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos por el Estado Libre Asociado de Puerto Rico." *Díaz Vázquez y otros v. Colón Peña y otros,* 2024 TSPR 113, 214 DPR___ (2024), pág. 8, citando a

*Laureano v. Mun. de Bayamón,* 197 DPR 420, 433 (2017); véase, además, *Miranda Corrada v. DDEC et al.,* 211 DR 738, 746 (2023); *Román Ortiz v. OGPe,* 203 DPR 947, 957 (2020). A esos fines, la Ley Núm. 161, *supra,* creó la OGPe, adscrita a la Junta de Planificación, a quien le confirió autoridad para evaluar, conceder y denegar determinaciones finales y permisos, licencias, inspecciones, certificaciones y cualquier otra autorización otro trámite que sea necesario.

Surge de la exposición de motivos que su aprobación responde al interés legislativo de transformar el sistema de permisos a uno más transparente, ágil, confiable y eficiente.[14] Al mismo tiempo, tiene como objetivo establecer un balance entre el desarrollo económico y la protección del derecho a disfrutar la propiedad.

El Art. 9.10 de la antedicha ley establece la corrección de las determinaciones finales y los permisos concedidos por la OGPe. Así, dispone lo siguiente:

> Se presume la corrección y la legalidad de las determinaciones finales y de los permisos expedidos por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V y por los Profesionales Autorizados. No obstante, cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso, o en aquellos casos en que la estructura represente un riesgo a la salud o la seguridad, a condiciones ambientales o arqueológicas, la determinación final emitida y el permiso otorgado por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V o por el Profesional Autorizado, deberá ser revocado. La estructura se podrá modificar, conservar o demoler, sólo después de que un Tribunal competente así lo determine y siguiendo con el procedimiento judicial establecido en el Capítulo XIV de esta Ley, además de cumplir con el debido proceso de ley.

> Además, se dispone que, bajo ninguna circunstancia, una determinación final será suspendida, sin mediar una autorización o mandato judicial de un Tribunal competente o el foro correspondiente, en estricto cumplimiento con el debido proceso de ley. Las disposiciones de este Artículo no crearán un precedente reclamable por terceros ajenos a la propiedad objeto del permiso. Entendiéndose que, sujeto a lo dispuesto en esta Ley, una determinación final se considerará final y firme, o un permiso, y no podrá ser impugnado una vez el solicitante haya cumplido con todos los requisitos establecidos en la notificación de determinación final y haya transcurrido el término de veinte (20) días sin que una parte adversamente afectada por la

---

[14] Exposición de Motivos, Ley Núm. 161-2009, *supra.*

notificación haya presentado un recurso de revisión o un proceso de revisión administrativa, así como haya transcurrido el término de treinta (30) días para solicitar revisión judicial. No obstante, la parte adversamente afectada por una determinación final podrá ser revisada sujeto a lo establecido en esta Ley. *Íd.,* sec. 9019i.

No obstante, si bien el artículo anterior otorga la presunción de legalidad de una determinación final administrativa de la OGPe, cabe destacar el más reciente pronunciamiento de nuestro Tribunal Supremo en *Vázquez y otros v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* 2025 TSPR 56, 215 DPR ___ (2025). Allí, nuestro Máximo Foro judicial revisó el trato que los tribunales deben concederle a las determinaciones de derecho de las agencias administrativas, a la luz de lo resuelto en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), y resolvió que "los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias" y "**no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua**." *Vázquez y otros v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros, supra,* pág. 28. (Negrillas en el original).

Por otro lado, mediante el Art. 14.1 de la Ley 161-2009 se estableció un procedimiento especial bajo el correspondiente *injunction* estatutario. Se caracteriza por ser un mecanismo estatutario independiente, sumario y limitado. *Díaz Vázquez y otros v. Colón Peña y otros,* supra, citando a *CBS Outdoor v. Billboard One, Inc. et al.,* 179 DPR 391,408 (2010) (citas omitidas). El Art. 14.1 dispone lo siguiente:

> La Junta de Planificación, así como cualquier Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o **una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction, mandamus,* sentencia declaratoria, o cualquier otra acción adecuada para solicitar: 1) la revocación de un permiso otorgado**,

cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) **la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado**; 3) la paralización de un uso no autorizado; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

**Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida**, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, **una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia**. Una vez habiéndose presentado el recurso extraordinario al amparo del presente Artículo, **la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada *ultra vires.***

El Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista. En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el Tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.

Las revisiones de los dictámenes bajo este Artículo ante el Tribunal de Apelaciones se remitirán a los paneles especializados creados mediante esta Ley y dicho foro tendrá 60 días para resolver el recurso de revisión desde la presentación del mismo. [Citas omitidas] (Énfasis nuestro).

Lo antes constituye un procedimiento legal especial o recurso extraordinario que contempla la Regla 53 de Procedimiento Civil, *supra*, por lo que se tramita en la forma prescrita en el propio estatuto.

La finalidad principal del *injunction* estatutario es "prevenir infracciones a las disposiciones de [su] ley y proteger la política pública que el estatuto está llamado a implantar." *Next Step Medical v. Bromedicon et al.,* 190 DPR 474, 497 (2014). Siendo así, el mecanismo interdictal aludido se limita "a la obtención de órdenes para la paralización inmediata, provisional o permanente de usos contrarios a la ley." *ARPe v. Rivera,* 159 DPR 429, 443-444 (2003). Además, por su naturaleza, "el *injunction* estatutario es

independiente del *injunction* tradicional y, por consiguiente, generalmente exento de la normativa aplicable a este último". *Next Step Medical v. Bromedicon, supra,* pág. 497. Ello se debe a que "los requisitos del *injunction* tradicional son más rigurosos que los exigidos para el *injunction* estatutario". *Íd.*

Por tal razón, la evaluación sobre la concesión de un <u>*injunction* estatutario</u> exige un tratamiento especial, comprendido dentro de un examen o escrutinio judicial más limitado. *Íd.* Cónsono con lo anterior, el empleo del mecanismo interdictal estatutario debe establecer: (1) que existe una ley o reglamento que regula el uso o actividad en cuestión; y (2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento. *ARPe v. Rivera, supra,* pág. 445.

**Asimismo, por ser de naturaleza estatutaria y carácter especial, el *injunction* provisto por la Ley Núm. 161-2009, *supra*, no está sujeto a la doctrina de agotamiento de remedios administrativos. *Plaza Las Américas v. N & H,* 166 DPR 631, 647 (2005); *Mun. de Caguas v. AT & T,* 154 DPR 401 (2001).** (Énfasis nuestro)

Como es sabido, la antedicha doctrina determina "la etapa en la cual el litigante puede recurrir a los tribunales". *ELA v. 12,974.78 Metros Cuadrados,* 90 DPR 506, 513 (1964). En otras palabras, los tribunales examinan cuándo intervienen con una controversia previamente sometida a la atención de una agencia administrativa. *Guzmán y otros v. ELA,* 156 DPR 693, 712 (2002). El Tribunal Supremo de Puerto Rico señaló que esta doctrina:

> [A]plica en casos en los cuales, una parte, que instó o tiene pendiente alguna acción ante la consideración de una agencia o ente administrativo, recurre al foro judicial sin antes haber completado todo el trámite administrativo disponible. Lo que implica pues, que al amparo de la misma, se tienda a cuestionar la procedencia de una acción judicial instada por una parte, *que acudió en primera instancia a un organismo administrativo,* y que luego, sin antes esperar a que finalicen tales trámites o a que se le concedan los remedios administrativos correspondientes, se desvía de tal cauce recurriendo, al mismo tiempo, ante el tribunal, en

busca de aquel remedio que *dejó pendiente de adjudicación ante la agencia pertinente*. (Énfasis en el original). (Citas omitidas). *Íd.*

Cónsono con lo anterior, "es evidentemente necesario que la parte peticionaria ante el foro judicial sea la misma parte que participó en el procedimiento administrativo pero que no agotó la fase de éste que estaba aún pendiente." *Mun. de Caguas v. AT & T, supra*, a la pág. 409.

Pertinente al caso de autos, en *Díaz Vázquez y otros v. Colón Peña y otros*, supra, a la pág. 12-13, nuestro Más Alto Foro judicial pronunció, al discutir el interdicto estatutario análogo al provisto por el Artículo 28 de la derogada ley orgánica de la Administración de Reglamentos y Permisos (ARPe), agencia predecesora de la OGPe,[15] que el referido artículo "establece el derecho de toda persona a acudir directamente al foro judicial, *en preterición del cause (sic) administrativo*[.]" *Mun. de Caguas v. AT & T, supra*, a la pág. 415. (Énfasis nuestro). Además, dicha disposición "claramente codifica el derecho que tiene toda persona a acudir a un tribunal en casos como el presente y revela la intención legislativa de favorecer el foro judicial ante reclamos de ciudadanos para evitar estorbos en su propiedad o vecindad." *Íd.,* pág. 416.

Además, en *Díaz Vázquez y otros v. Colón Peña y otros*, supra, el Alto Foro expuso que, el *injunction* estatutario para ordenar la

---

[15] Dicho artículo disponía, en lo pertinente, lo siguiente:

> El Administrador o el Secretario de Justica en los casos en que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina . . . podrá entablar recurso de interdicto . . . para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración.

> Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a esta ley y a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (*nuisance*) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. Ley Núm. 76 de 24 de junio de 1975, mejor conocida como la *Ley Orgánica de la Administración de reglamentos y Permisos*, según enmendada, 23 LPRA ant. sec. 72.

paralización o demolición de un uso u obra o la revocación de un permiso al amparo del Art. 14.1 de la Ley 161-2009, *supra,* no se rige por los requisitos y criterios rigurosos que aplican al *injunction* tradicional en virtud de la Regla 57 de Procedimiento Civil, *supra,* ni tampoco se le pueden oponer las defensas tradicionales de la equidad. En su consecuencia, este remedio al ser de carácter estatutario y no surgir de la equidad, procede cuando se demuestre que la obra o el uso no cuenta con autorizaciones o permisos correspondientes o que se realizó en contravención a lo dispuesto en el permiso concedido.

   **b) Reglamento Conjunto**

En virtud de la encomienda provista por la Ley Núm. 161-2009, *supra,* la Junta de Planificación promulgó el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto de 2020).

Como cuestión de umbral, es preciso destacar dos (2) decisiones pertinentes sobre el particular de nuestro Tribunal Supremo. En *FCPR v. ELA et al.*, 211 DPR 521 (2023), nuestro Más Alto Foro declaró la nulidad del Reglamento Conjunto de 2020. Luego, en *Martínez Fernández et al. v. OGPe, et al.*, 212 DPR 285 (2023), sostuvo su anterior determinación de nulidad tanto del Reglamento Conjunto de 2020 como del Reglamento Conjunto de 2019 y pautó que **las solicitudes de permisos pendientes de adjudicación** y aquellas para las que se hayan realizado o señalado vistas adjudicativas **se continuarían tramitando al amparo del reglamento conjunto aplicable**. Esto se extendía a aquellos permisos cuya autorización y expedición no era final y firme por encontrarse bajo revisión judicial. *Íd.* De esta forma, el Tribunal Supremo estableció que *los tribunales considerarán los recursos que*

*se presenten a tales efectos a la luz del reglamento que la agencia haya utilizado para autorizar y expedir el permiso impugnado. Íd.*

En el presente caso, a pesar de que para la fecha en la que se expidió el permiso de construcción el Reglamento Conjunto de 2020 había sido declarado nulo y había entrado en vigor el Reglamento Conjunto Núm. 9473 de 2023, conforme la determinación y pronunciamiento del Tribunal Supremo en *Martínez Fernández, et al v. OGPe,* supra, son de aplicación las disposiciones del Reglamento Conjunto de 2020 toda vez que se trata de un permiso expedido al amparo de las disposiciones de este último. Ello, por cuanto la solicitud del Permiso de Construcción fue presentada el 10 de agosto de 2022, fecha en la cual se encontraba vigente el Reglamento Conjunto de 2020.

Habiendo esbozado lo anterior, veamos varias disposiciones del Reglamento Conjunto pertinentes al presente caso. En primer lugar, la sección 3.7.3.1 establece que "[l]os permisos de uso son de naturaleza 'in rem', por lo que *no se requerirá* la expedición de un nuevo permiso de uso o la renovación del mismo, siempre y cuando *el uso continúe siendo el mismo.*" Reglamento Conjunto, *supra*, pág. 205. (Énfasis nuestro). En adición, "[l]os permisos de uso emitidos con anterioridad a establecerse el Permiso Único, se considerarán que mantienen su vigencia y aplicabilidad intacta al incorporarse en el Permiso Único para fines de la aplicación de los derechos adquiridos que el permiso de uso otorgó sobre la propiedad." *Íd.* No obstante, "[s]i el uso por el cual se expide un permiso se descontinuar[a] por dos (2) años o más, el mismo dejará de ser válido independientemente de que sea un permiso permitido o no." *Íd.*

Por otro lado, el Reglamento Conjunto dedica un capítulo a las estaciones de gasolina. Pertinente al caso de marras, la sección 8.8.1.2 dispone que:

> Toda solicitud para una *nueva estación de gasolina* o ampliación a una existente que conlleve un aumento en el

número de despachadoras existentes, mayor a un cincuenta por ciento (50%), deberá ser acompañada de una certificación donde conste que han sido *notificados de la intención de establecer dicha estación de gasolina todos los distribuidores, mayoristas, dueños o arrendatarios de estaciones de gasolina que radiquen dentro del perímetro establecido* más adelante a propósito del estudio de viabilidad. Dicha certificación incluirá el nombre y la dirección de las personas notificadas. *Íd.*, pág. 596. (Énfasis nuestro).

Asimismo, la sección 8.8.1.3 establece, en lo pertinente, cuándo se requerirá la celebración de vistas públicas previo a la aprobación de una nueva estación de gasolina. Específicamente, la antedicha sección expone que:

a. La OGPe o el Municipio Autónomo con Jerarquía de la I a la III podrán aprobar el *establecimiento de nuevas estaciones de gasolina*, previa celebración de vistas públicas y previa recomendación del DDEC.

b. Sobre estas vistas públicas se notificará y solicitará la participación del DDEC, DACO, DJ, a los distribuidores mayoristas, dueños o arrendatarios de las estaciones de gasolina comprendidas dentro del perímetro antes establecido como propósito del estudio de viabilidad, a los detallistas que operan dichas estaciones de gasolina, las asociaciones existentes de detallistas de gasolina y a cualquier otra parte afectada o interesada, según surja de los expedientes correspondientes. *Íd.*, pág. 597. (Énfasis nuestro).

Por otro lado, el Reglamento Conjunto dispone que toda solicitud para una nueva estación de gasolina debe ir acompañada de un estudio de viabilidad que exponga la necesidad y conveniencia del establecimiento de la estación. Particularmente, el estudio debe considerar, con respecto al sector dentro del perímetro de mil seiscientos (1,600) metros radiales, lo siguiente:

a. Toda solicitud para una *nueva estación de gasolina o ampliación de una existente que conlleve un aumento en el número de despachadoras existentes, mayor a un cincuenta por ciento (50%)*, deberá ser acompañada de un estudio de viabilidad que demuestre la necesidad y conveniencia del establecimiento de la misma.

b. Dicho estudio deberá considerar, con respecto al sector dentro del perímetro de mil seiscientos (1,600) metros radiales, los siguientes aspectos:
   1. La concentración poblacional.

   2. La concentración el tránsito vehicular, de los residentes en el área de mercado.

   3. Intensidad de los usos comerciales, industriales e institucionales.

4. Negocios similares existentes dentro del sector.

5. *Impacto anticipado del nuevo establecimiento sobre aquellos de naturaleza similar existentes dentro de dicho perímetro.*

6. La forma de operación de la nueva, esto es, si es de tipo convencional o de autoservicio.

7. Análisis de tránsito que considere la demanda a satisfacer de los residentes en el área de mercado, el tránsito esperado y el impacto sobre las vías existentes.

c. Considerar la cercanía a áreas naturales protegidas, y cuerpos hídricos superficiales y subterráneos.

d. Cualesquiera otros factores relevantes que merezcan consideración en relación con la propuesta estación de gasolina. *Íd.* (Énfasis nuestro).

### c) Regla 10.2 y parte indispensable

Como es sabido, la Regla 10.2 de Procedimiento Civil, 31 LPRA Ap. V, R. 10.2, establece que cualquier defensa de hechos o de derecho que se tenga contra una reclamación se expondrá en la alegación responsiva. No obstante, esta regla dispone la excepción para que un demandado pueda presentar una moción de desestimación en un pleito antes de presentar su contestación a la demanda, por ciertos fundamentos. *Aut. de Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería*, 167 DPR 625, 649 (2006).

En específico, la parte contra quien se ha instado una reclamación puede presentar una moción de desestimación, en la que alegue cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y **(6) dejar de acumular una parte indispensable**. Regla 10.2 de Procedimiento Civil, *supra,* R. 10.2; T*rans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012). (Énfasis nuestro).

Los tribunales deben ser celosos guardianes de la jurisdicción. *Lozada Sánchez v. ELA*, 184 DPR 898, 994 (2012);

*Dávila Pollock et als. v. RF Mortgage*, 182 DPR 86, 87 (2011). De modo que los tribunales están obligados a auscultar su propia jurisdicción y, en el caso de los foros apelativos, incluye revisar la jurisdicción del foro recurrido. *Shell v. Srio. Hacienda*, 187 DPR 109, 122 (2012); *Aguadilla Paint Center v. Esso*, 183 DPR 901 (2011).

La Regla 16 de Procedimiento Civil, *supra*, R. 16, instituye que las personas con un interés común, y sin cuya presencia no pueda adjudicarse la controversia, se acumularán como demandantes o demandadas según corresponda. La parte indispensable es aquella cuyos derechos se podrían lesionar y afectar radicalmente al dictarse un decreto final. *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 433 (2003). El antedicho interés común "no es cualquier interés en el pleito." *Romero v. SLG Reyes*, 164 DPR 721, 733 (2005). *Íd.* En adición, "tiene que ser real e inmediato, al extremo de impedir que se elabore un decreto adecuado[.]" *Íd.*

La sentencia que no incluye a una parte indispensable no es válida, pues tiene un defecto jurisdiccional. *García Colón v. Sucn. González*, 178 DPR 527, 550 (2010): *Fred Reyes y Otros v. ELA*, 150 DPR 599, 608-609 (2000); *Unysis v. Ramallo Brothers*, 128 DPR 842, 859 (1991). La omisión de acumular en el pleito a una parte indispensable acarrea la nulidad del dictamen que posteriormente se emita en el pleito. No obstante, aunque la omisión de una parte indispensable es motivo para desestimar el pleito, no existe impedimento para conceder la oportunidad de traerla al pleito siempre y cuando el tribunal pueda adquirir jurisdicción sobre la misma. *Deliz et al. v. Igartúa et al., supra.*

**III.**

En primer lugar, la parte apelante sostiene que el TPI incidió al asumir jurisdicción sobre el presente caso. Particularmente, aduce que no procede el mecanismo de *injunction* estatutario para revisar el permiso otorgado por la OGPe ya que este es final y firme,

toda vez que, la parte apelada no acudió en revisión administrativa. Asimismo, sostiene que el foro primario atendió controversias que no están cubiertas por el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, en específico: (1) si la estación de gasolina es nueva o una existente y (2) si se cumplió con el requisito de notificación a la parte recurrida. No le asiste la razón.

De una lectura de la letra clara del Artículo 14.1 de la Ley Núm. 161-2009, *supra*, surge el procedimiento permitido a través de la figura del *injunction* estatutario, para la revocación de un permiso otorgado, la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes.

Además, conforme a la más reciente doctrina, los tribunales están investidos de la facultad y deber inherente para revisar en toda su extensión las conclusiones realizadas por las agencias. *Vázquez y otros v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros, supra*, pág. 31. Toda vez que, el *injunction* provisto por la Ley Núm. 161-2009, *supra*, es un mecanismo de naturaleza estatutaria y de carácter especial, no cabe la aplicación de la doctrina de agotamiento de remedios administrativos. Lo antes, conforme la normativa antes expuesta y, en particular, lo resuelto en *Plaza Las Américas v. N & H*, supra y *Mun. de Caguas v. AT & T*, supra.

En su consecuencia, el TPI no abusó de su discreción al asumir jurisdicción, conforme permite el Art. 14.1 de la Ley 161-2009, *supra*[16] y atender controversias de hechos medulares sobre si la estación de gasolina en cuestión era nueva o existente, así como, sobre la falta de notificación a las partes, conforme exige la Sección 8.8.1.2 del Reglamento Conjunto. Cómo vimos, la sección 8.8.1.2 del Reglamento Conjunto 2020, *supra*, pág. 596, dispone que:

---

[16] Toda vez que, el remedio perseguido a través del *injunction* estatutario de la Ley Núm. 161-2009*, supra,* es sustancialmente idéntico al de la Ley de ARPE, *supra.*

> Toda solicitud para una nueva estación de gasolina o ampliación a una existente que conlleve un aumento en el número de despachadoras existentes . . . deberá ser acompañada de una certificación donde conste que han sido notificados de la intención de establecer dicha estación de gasolina todos los distribuidores, mayoristas, dueños o arrendatarios de estaciones de gasolina que radiquen dentro del perímetro establecido[.]

Hemos evaluado la totalidad del expediente a la luz del derecho aplicable a este proceso y colegimos que, el TPI no incidió al asumir jurisdicción sobre la causa y determinar que, la parte recurrida es mayorista o dueña de estaciones de gasolina radicadas dentro del perímetro reglamentario, por lo que posee un interés propietario que podría verse afectado. Así pues, debió ser notificado de una nueva estación de gasolina o la ampliación de una existente.

Como segundo error, la parte apelante señala que el foro primario incidió al resolver que el señor Pérez Rodríguez no es parte indispensable y excluirlo del presente caso. Sostiene que, el señor Pérez Rodríguez posee un interés que se vería afectado por la disposición del caso, al ser el optante en un contrato de opción de compra de la estación de gasolina que suscribió con J & Z. Su postura no nos persuade.

El Tribunal Supremo ha resuelto que el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, no exige que la parte demandada posea un interés propietario o sea el titular de la propiedad donde se sostenga que se realizan acciones contrarias a la referida ley. *Díaz Vázquez y otros v. Colón Peña y otros*, *supra*, pág. 22. Más bien, el interés propietario o personal afectado lo debe tener la parte demandante para poder incoar el recurso interdictal. Siendo así, es forzoso concluir que el señor Pérez Rodríguez no tiene legitimación pasiva estatutaria en la presente controversia ni es indispensable para su adjudicación. Esto último porque, el interés aducido tampoco es uno real e inmediato ni de carácter común al de la parte apelante, como lo requiere la Regla 16.1 de Procedimiento Civil, *supra*, R. 16.1. Además, no nos persuade la postura del apelante sobre la presunta

privación del señor Pérez Rodríguez a los remedios legales para vindicar sus intereses como optante del inmueble donde ubica el proyecto en controversia. El optatario en un contrato de opción "[no] puede incurrir en actuaciones voluntarias, negligentes o dolosas que puedan frustrar la expectativa del optante a hacer ejercicio de su derecho de opción." *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 250 (2002). De lo contrario, "incurrirá en responsabilidad contractual y el optante perjudicado podrá interponer una acción indemnizatoria contra el concedente que frustró o perjudicó el ejercicio de la facultad de optar." *Íd.*

Finalmente, la parte apelante subraya, dentro de su tercer señalamiento, dos (2) errores por parte del foro primario.

Primero, aduce que el TPI se equivocó al no desestimar el presente caso porque el emplazamiento fue insuficiente en derecho. Precisamente, señala que el emplazamiento advertía de un término de treinta (30) días para presentar alegación cuando procedía un término de sesenta (60) días porque una instrumentalidad gubernamental es parte en el pleito. No le asiste la razón.

Las notificaciones requeridas a las partes adversas en un procedimiento de *injunction* son análogas al emplazamiento regulado en la Regla 4 de Procedimiento Civil, *supra,* R. 4. Así, la Regla 57.2 de Procedimiento Civil, *supra*, R. 57.2, establece que no se expedirá ningún auto de *injunction* sin notificación previa a la parte adversa y que dicha notificación se realiza de la misma manera permitida para el diligenciamiento de un emplazamiento. No obstante, si bien las disposiciones de la Regla 4 de Procedimiento Civil, *supra*, R. 4, son supletorias a los procesos de *injunctions*, estas no pueden ir en contra del carácter sumario de estos recursos. *Torres Ponce v. Jiménez*, 113 DPR 58, 61 (1982); *Corujo Collazo v. Viera Martínez*, 111 DPR 552, 556 (1981).

Asimismo, la Regla 10.1 de Procedimiento Civil, *supra*, R. 10.1, exige que la parte demandada, una vez es emplazada, presente su contestación a la demanda dentro de los treinta (30) días siguientes de habérsele entregado copia de la demanda y el emplazamiento. Sin embargo, cuando el Estado Libre Asociado de Puerto Rico y los municipios, sus funcionarios o funcionarias o una de sus instrumentalidades, excluyendo a las corporaciones públicas, sean parte del pleito, la antedicha regla concede el término de sesenta (60) días para que la parte demandada presente su contestación tras habérsele entregado copia de la demanda y el emplazamiento.

De ordinario, la presencia de una instrumentalidad pública como la OGPe, activaría las disposiciones de la referida Regla 10.1, *supra*, en un procedimiento judicial **ordinario** y brindaría a un demandado el término de sesenta (60) días a partir del diligenciamiento del emplazamiento para presentar su alegación responsiva.

No obstante, como en todo procedimiento de *injunction*, nos encontramos ante un procedimiento judicial **especial** de carácter **expedito**. Tanto es así que, el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, que versa sobre el *injunction* estatutario, exige la celebración de una vista judicial dentro de los diez (10) días naturales desde la presentación del recurso y que el foro de instancia dicte sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista. 23 LPRA sec. 9024.

Inclusive, la naturaleza expedita del recurso interdictal se extiende a su fase apelativa en cuanto exige que el recurso de revisión judicial se resuelva dentro de un término de sesenta (60) días desde su presentación. Añádase a ello que, el Tribunal Supremo en *Díaz Vázquez y otros v. Colón Peña y otros*, supra, determinó que los procedimientos legales especiales como lo estatuido en el

Artículo 14.1 de la Ley Núm. 161-2009, *supra*, se tramitaran en la forma prescrita en el estatuto que, en este caso es un *injunction* estatutario.

Por lo tanto, el foro primario actuó correctamente al determinar que el carácter expedito del recurso del *injunction* estatutario provisto en la Ley Núm. 161-2009, *supra*, es incompatible con las disposiciones atinentes a los procesos ordinarios.

Segundo, la parte apelante señala que, el foro primario se equivocó al resolver que la intención que demostró J & Z para continuar el uso y operación de la estación de gasolina no tuvo el efecto de jurídico de impedir que sus permisos vencieran, en contravención con la doctrina jurídica aplicable. Sostiene que, el paso del huracán María y la pandemia de COVID-19 sobre Puerto Rico obstaculizaron el trámite de las gestiones para reabrir la estación de gasolina, que fue destruida por el evento meteorológico. Por ello, aduce que su intención siempre fue volver a operar la estación de gasolina y que el cierre de esta fue uno involuntario.

Según surge de la *Sentencia* apelada, el foro primario resolvió que el presente caso no es sobre una estación de gasolina existente, sino sobre una nueva. Lo anterior, toda vez que, el permiso de uso perdió su vigencia al quedar inoperante por más de dos (2) años, conforme a la sección 3.7.3.1 del Reglamento Conjunto de 2020, *supra*, pág. 205.

Asimismo, determinó que no procedía aplicar la teoría subjetiva sobre la intención de uso al presente caso, toda vez que, no tenía fundamento en la ley. Además, resolvió que, si bien J & Z presentó prueba de que su intención era reabrir la estación de gasolina, que se mantuvo inoperante por razones obvias, no demostró que realizó gestiones afirmativas para materializar su intención.

En nuestro ordenamiento se ha reconocido la teoría subjetiva sobre la intención del dueño de una estructura o comercio para dirimir si abandonó el uso de su estructura o comercio para fines de la Ley Núm. 161-2009, *supra.* Ahora bien, en el presente caso, conforme la apreciación de la prueba realizada por el foro primario que merece nuestra deferencia, no surge evidencia que sustente dicha intención sobre los trámites ante las aseguradoras, pagos de patentes o licencias luego del año 2017, así como el presunto registro de los tanques soterrados ante la Junta de Calidad Ambiental, entre otros. Tampoco el apelante nos ha puesto en posición para revertir la presunción de corrección de las determinaciones de hecho realizadas por el Tribunal de Primera Instancia. *Serrano Muñiz v. Auxilio Mutuo*, 171 DRP 717, 741 (2007).

Como vimos, la sección 3.7.3.1 del Reglamento Conjunto de 2020 es claro en cuanto a que, el cese del uso de un negocio por un período de dos (2) años provoca que este pierda la vigencia de sus permisos. Aunque paneles hermanos de esta Curia han reconocido la intención del dueño de mantener el uso de su negocio para preservar la vigencia de sus permisos, a pesar de no operarlo durante más de dos (2) años, dichos casos se distinguen del presente toda vez que, en ellos, la intención subjetiva del uso fue exteriorizada a través de diversos actos.

Por ejemplo, en *González Muñiz v. ARPe,* KLRA200400768 (22 de junio de 2005), se probó la intención del uso al presentar evidencia de la vigencia de las licencias para operar el negocio. En el presente caso, las licencias para expedir bebidas alcohólicas, gasolina y cigarrillos, que obran en el expediente, expiraron el 30 de abril de 2016 y el último pago de la patente municipal fue el 25 de abril de 2016.[17] Asimismo, en *Alverio Service Station, Inc. v. Mun. Autónomo de Caguas*, KLRA202200442 (7 de febrero de 2024), uno

---

[17] Apéndice VI de la *Petición de Apelación,* pág. 35-37 y 39.

de los actos ostensibles que probaron la intención del dueño de preservar el uso de su estación de gasolina fue el proceso de certificar los tanques soterrados ante la Junta de Calidad Ambiental. De una evaluación sosegada del dictamen apelado no surge que, el foro primario se haya extralimitado en su apreciación y valoración de la prueba presentada por el apelante. A modo de ejemplo, observamos que, no surge en el expediente del caso ante nos, un certificado de registro de los tanques soterrados de la estación de gasolina de J & Z expirado desde el 14 de abril de 2012, lo cual no sostiene la postura del apelante.[18] Añádase que, resulta evidente que, ante el vencimiento del permiso del apelante y el tiempo transcurrido ocurrieron cambios en la comunidad y la zona donde ubican los comercios en cuestión. Del expediente surge que, después del vencimiento del permiso y la presunta destrucción de la estación de J & Z, VP Petroleum comenzó a operar su estación de gasolina cerca de la primera. Ciertamente, de J & Z renovar sus operaciones en la estación de gasolina, conforme al trámite que inició, VP Petroleum quedaría afectada sin habérsele concedido la oportunidad de intervenir en el proceso, conforme se lo permite el Reglamento Conjunto.

Hemos evaluado las posturas de las partes, con el beneficio de la prueba oral y colegimos que, el apelante no nos ha puesto en posición para revertir la apreciación de la prueba en este caso. En su consecuencia, concluimos que, el TPI no incidió al determinar que, J & Z no presentó prueba para establecer hechos afirmativos que hicieran tangible su intención subjetiva de preservar el uso de su negocio para justificar la vigencia de sus permisos, aunque no operara la estación por más de dos (2) años. Los errores señalados no se cometieron.

---

[18] *Íd.,* pág. 42.

Por último, cabe señalar que lo antes previsto, no prejuzga cualquier solicitud ulterior ante el foro administrativo y/o el foro judicial que presenten las partes, si alguna.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones